

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LBCMT 2007-C3 STERLING RETAIL, LLC., <br><br> Plaintiff, <br><br> v. <br><br> ERIC D. SHEPPARD and PHILIP WOLMAN, <br><br> Defendant. | Civil Action No.: 1:12-cv-470 |

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff LBCMT 2007-C3 Sterling Retail, LLC's ("Sterling Retail") Motion for Summary Judgment (Dkt. No. 28). Defendants Eric Sheppard and Philip Wolman (collectively "Defendants") oppose Plaintiff's motion and a hearing was held before this Court on March 1, 2013. In its one-count Complaint (Dkt. No. 1), Plaintiff alleges that Defendants breached a Guaranty on a promissory note.

### I. BACKGROUND

#### A. The Note and Guaranty

On July 12, 2007, WSG Dulles GL, LLC ("WSG Dulles"), a Virginia limited liability company, executed and delivered a promissory note ("Note") promising to pay Lehman Brothers Bank FSB ("Lehman Brothers") a sum of $3,280,000. Defendant Philip Wolman signed the Note on behalf of WSG Dulles GL as its manager. Contemporaneously, he and Defendant Eric D. Sheppard executed a Guaranty of Recourse Obligations of Borrower ("Guaranty") in which Defendants personally guaranteed WSG Dulles GL, LLC's full payment under the Note. WSG Dulles GL and WSG Dulles, L.P. also executed and delivered a Fee and Leasehold Deed of

1

Trust, Fixture Filing and Security Agreement ("Security Instrument") with Lehman Brothers as beneficiary, which covered the fee and leasehold estate of WSG Dulles GL and WSG Dulles, L.P. in certain properties in Sterling, Virginia.

### B. Note Transfers

Lehman Brothers then, in good faith and for value, indorsed the Note to LaSalle Bank National Association, as trustee for the registered holders of LB Commercial Mortgage Trust 2007-C3, Commercial Mortgage Pass-Through Certificates, Series 2007-C3 ("Assignee #2). Bank of America, N.A. became successor to LaSalle Bank National Association by merger. In good faith and for value, Bank of America, N.A. indorsed the Note to U.S. Bank National Association, not in its individual capacity, but solely in its capacity as Trustee for the registered holders of Assignee #2. Assignee #2 then, in good faith and for value, indorsed the Note to the order of Plaintiff LBCMT 2007-C3 Sterling Retail, LLC.

### C. Bankruptcy

In late 2010, according to Defendants, WGC Dulles GL, LLC sought to refinance its debt. Plaintiff allegedly informed Defendant that no single loan could be refinanced, that all loans in the portfolio had to be refinanced together, and that refinancing discussions could not proceed until WGC Dulles GL, LLC missed loan payments for sixty consecutive days. Plaintiff claims this representation of the discussion between Plaintiff and Defendant Sheppard is inaccurate, but admits that some discussion took place regarding lender accommodations for the WSG Dulles GL, LLC debt. At that time, Defendants stopped making payments on the Note and began discussions about refinancing the debt with LNR Partners, LLC ("LNR"), the special servicer for Bank of America, N.A. On March 14, 2011, Defendant Sheppard claims he informed LNR that he had two potential lenders interested in refinancing the debt. Negotiations

between Defendant and potential lenders for the refinancing continued and on April 21, 2011, Defendant Sheppard obtained a preliminary letter of intent for the refinancing of the loans from Ladder Capital. By June 8, 2011, Sheppard had signed a comprehensive Term Sheet and application for the Ladder Capital loan, which required a $190,000 good faith deposit.

Several days later, Ladder Capital informed Sheppard that it would not be pursuing the refinancing due to an existing business relationship with LNR. On March 31, 2011, LNR sent WSG Dulles GL, LLC a notice of default. Nearly ten months later, on January 17, 2012, LNR sent a demand and notice of acceleration, which required full payment due under the Note and ancillary loan documents. On January 31, 2012, substitute trustee under the Security Instrument gave notice of the sale of the Property subject to the Note. Prior to the sale set for February 23, 2012, WSG Dulles GL, LLC filed voluntary petitions in bankruptcy in the United States Bankruptcy Court of the Eastern District of Virginia. *See* Petition Nos. 12-11149 and 12-11151. The property subject to the Note, therefore, is now an asset of the bankruptcy estate.

Plaintiff alleges that Defendants Sheppard and Wolman, under the terms of the Guaranty, are personally liable for the entire debt if the property or any part thereof becomes as asset in a voluntary bankruptcy proceeding. Plaintiff further claims that all conditions precedent have occurred or have been waived by Defendants making payment under the Guaranty due as of the filing of the Complaint.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. " Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

3

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A moving party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323. A party moving for summary judgment has the initial burden of showing the court the basis for its motion, and identifying the evidence that demonstrates the absence of a genuine issue of material fact. *Id.* A dispute of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A motion for summary judgment is not the time for credibility determinations, the weighing of the evidence, and the drawing of inferences from fact. *Id.* at 255. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006).

## III. ANALYSIS

Under Virginia law, a Guaranty is an independent contract in which the guarantor promises to pay a debt in the event that the primary obligor fails to satisfy the debt. *See McDonald v. Nat'l Enters., Inc.*, 262 Va. 184, 189 (2001). To collect on a guaranty, the plaintiff must prove (1) the existence and ownership of the guaranty, (2) the terms of the primary obligation, (3) default on the obligation by the primary obligor, and (4) nonpayment of the amount due from the guarantor under the guaranty contract. *Wells Fargo Bank, N.A. v. Morton & Morton, LLC*, 2011 WL 1306479, *5 (E.D. Va. April 1, 2011).

According to the stipulated facts, all elements of a Guaranty were satisfied when Defendants filed for temporary bankruptcy protection. Defendants admit that they signed the

4

Guaranty in their individual capacities, promising to pay the debt incurred by WSG Dulles GL, LLC in the event the company failed to satisfy its obligations under the promissory note. It is also uncontested that WSG Dulles GL, LLC failed to make payments owed under the Note and that, since that time, Defendants as guarantors in their individual capacity have failed to satisfy the debt.

Looking to the Answer Defendants filed in response to Plaintiff's Complaint, there remain no genuine issues of fact concerning the obligations created under the Guaranty or whether certain triggering events occurred to cause the debt to fall upon Defendants. The Guaranty explicitly states that the guarantor's obligations would be triggered if WSG Dulles GL, LLC filed for bankruptcy. When the company filed for bankruptcy on February 23, 2012, the Guaranty triggered Defendants' obligations.

### A. Affirmative Defenses

While Defendants do not contest the fact that the Guaranty was properly executed and all necessary events occurred to allow recovery under the Guaranty, Defendants nonetheless contend that certain affirmative defenses preclude Plaintiff from recovering. First, Defendants allege that the primary obligor, WSG Dulles, did not default on its obligation under the Note because Plaintiff induced the default and should be estopped from claiming WSG Dulles was in default. Second, Defendants claim that a genuine issue of material fact remains as to whether the Notice of Default sent by Plaintiff was valid and effective and, therefore, whether an event of default ever occurred. Third, Defendants argue that Plaintiff's actions towards WSG Dulles and Defendants were in bad faith and a breach of the implied duty of good faith and fair dealing. Fourth, Defendants assert that there is a genuine issue of material fact about the amount due and

5

owing under the Note, and thus under the Guaranty. Plaintiff claims that these defenses do not allow Defendants to avoid recovery under the Guaranty.

Defendants also assert two affirmative defenses in their Answer to Plaintiff's Complaint that are not discussed in their Opposition to Plaintiff's Motion. Defendants claim that the Complaint fails to state a claim upon which relief can be granted. Answer at 4. Defendants abandon this argument by not addressing it in their Opposition. Given the unambiguous terms of the Guaranty, the Note and filing for bankruptcy, this defense is clearly without merit. Defendants' Answer also lists the affirmative defense of "unclean hands," which would prevent Plaintiff from recovering under the Guaranty. This defense is also not supported in Defendants' Opposition and is without merit. Unclean hands is a defense to an equitable claim and is not a proper affirmative defense in the action before the Court. *See Cline v. Berg*, 273 Va. 142, 147-149 (2007).

The first defense supported by Defendants is premised upon the fact that WSG Dulles relied on statements made by Plaintiff that induced its default; and, under the doctrine of equitable estoppel, Plaintiffs cannot recover due to Defendants' reliance on its representations. According to Defendants, sometime in late 2010, Sheppard approached LNR, the special servicer for Bank of America, N.A., seeking to modify its loan payments in order to avoid defaulting on the loan. Dkt. No. 42, Ex. A. According to Defendant Sheppard's affidavit, LNR informed him that the WSG Dulles Note was part of an asset pool and no single loan within that pool could be individually refinanced. Plaintiff also allegedly told Sheppard that "refinancing could not even be discussed until borrowers missed payments for sixty (60) days." *Id.* Based on this representation, WSG Dulles and other WSG-affiliated SPEs stopped making payments.

Defendants argue that Plaintiff's actions caused WSG Dulles to rely on its representations that it would discuss refinancing the loans in good faith. Equitable estoppel is designed to protect a party who, in good faith, has relied to his detriment upon the representations or conduct of another. *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996). Here, Defendants allege that Plaintiff represented that WSG Dulles could miss monthly payments under the Note, and that to do so would allow WSG Dulles to refinance its loan. Defendants also claim that Plaintiff did not inform Mr. Sheppard that these missed payments would constitute events of default under the loan documents. At no point, however, have Defendants alleged facts or presented evidence that Plaintiff informed Defendant Sheppard that missing payments would *not* result in default.

Furthermore, Defendants have not alleged any facts that suggest Plaintiff offered to waive the terms of the underlying Note. The language of the Note as well as the Guaranty do not allow for oral modifications. Section 9 of the Note is entitled, "No Oral Change," and states,

> This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Dkt. No. 1, Ex. 1. The Guaranty contains identical language but the term "Note" is replaced with "Guaranty." Dkt. No. 1, Ex. 4. Given these unambiguous provisions, Defendants should not have expected that its discussions with Plaintiff regarding refinancing could modify the payments required under the Note. It was unreasonable for Defendants to expect that missing consecutive months of payments would result in anything other than default status and nothing in Defendant Sheppard's affidavit suggests that Plaintiff represented as much. Defendants' equitable estoppel defense, therefore, fails as a matter of law and does not nullify the default

7

caused by WSG Dulles' missed payments. The first element to recover under a guaranty—default on the obligation by the primary obligor—is satisfied by WSG Dulles' missed payments.

Defendants are also precluded from prevailing under their argument that WSG Dulles was induced into default because the missed payments were not the only event that triggered Defendants' personal liability. Under the terms of the Guaranty, the guarantors promise to be personally liable for the entire debt "if the Property or any part thereof shall become an asset in...a voluntary bankruptcy or insolvency proceeding..." *See* Guaranty at 1, ¶ 6,(b)(i). Once WSG Dulles entered into the voluntary bankruptcy proceedings in the Bankruptcy Court for the Eastern District of Virginia, the obligations under the Guaranty were triggered.

### B. Notice of Default

Defendants next contend that a genuine issue of material fact exists as to whether Plaintiff issued a valid and effective Notice of Default, pursuant to the terms of the Note, which caused an "Event of Default" to occur. Defendants maintain that the Notice of Default sent to WSG Dulles (a) should have been sent to WSG Dulles LP and not only WSG Dulles GL, LLC, and (b) Wendy Beck, counsel to WSG Dulles and WSG Dulles LP, "was not listed as a recipient," as specifically required by the Note and Deed of Trust. Defendants also claim that the Demand Letter sent to WSG Dulles accelerating the debt was delivered to Ms. Beck by regular mail and not by hand delivery, overnight delivery or registered or certified mail, as required by the Note and Deed of Trust.

Defendants contend that these violations of the language contained in the underlying Note and Deed of Trust create a circumstance under which the "Event of Default" never occurred, meaning WSG Dulles was never in default. Without a default, the first element

8

required to recovery on a Guaranty, that the primary obligor defaults, is not satisfied. Defendants argue, therefore, they should not be liable under the terms of the Guaranty.

As discussed earlier, this argument must fail due to the fact that WSG Dulles' default was not the only triggering event that allowed Plaintiff to recover under the Guaranty. The terms of the Guaranty also explicitly provided that the guarantors would be liable for the entire debt if the property became the subject of a voluntary bankruptcy proceeding. Because the WSG Dulles property was undoubtedly subject to the voluntary proceedings before the Bankruptcy Court, the Guaranty became enforceable and the minimal deficiencies in the delivery of the Notice of Default do not preclude Plaintiff's recovery.

### C. Bad Faith

Defendants' third argument in opposition to Plaintiff's motion is that a genuine issue of material fact exists as to whether Plaintiff's actions towards WSG Dulles and Defendants were in "bad faith." Defendants have presented substantial arguments purporting to show that Plaintiff acted improperly by inducing WSG Dulles' default by allegedly agreeing to WSG Dulles' refinancing and buyout of the loan, tortiously interfering with its refinancing agreement with Ladder Capital, and then proceeding to foreclosure on the property. These actions, according to Defendants, are sufficient to allow a trier of fact to conclude that Plaintiff breached its implied duty of good faith and fair dealing.

Plaintiff challenges Defendant's affirmative defense alleging bad faith by arguing that Virginia law does not recognize an independent claim for breach of an implied covenant of good faith and fair dealing. *L&E Corp. v. Days Inns of Am., Inc.*, 992 F.2d 55, 59 n.2 (4th Cir. 1993). As the Supreme Court of Virginia stated in *Ward's Equipment, Inc. v. New Holland North Am., Inc.*, "when parties to a contract create valid and binding rights, an implied covenant of good

9

faith and fair dealing is inapplicable to those rights....such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equipment*, 254 Va. 379, 385 (1997) (citing *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873 (5th Cir. 1989). As such, the terms of the Guaranty are not subject to the implied duty of good faith and fair dealing. Ultimately, the terms of the Guaranty established that if the property subject to the debt became part of a voluntary bankruptcy proceeding, then Defendants became personally liable for the debt. Defendants controlled the entity, WSG Dulles, which was the primary obligor on the debt and voluntarily subjected the property to bankruptcy proceedings.

### D. Amount Due and Owing

Defendants' final argument in opposition to Plaintiff's motion claims that a genuine issue of material fact exists in terms of the amount "due and owing" under the Note, and thus under the Guaranty. The amount claimed by Plaintiff, according to Defendant, includes amounts for Note Rate Interest, Default Interest, and a Prepayment Premium. The calculations are premised on WSG Dulles's default and begin on February 28, 2012. Defendants claim, however, that a genuine issue of material fact exists as to whether a default occurred; and, at a minimum, the date of that default has not been established. As discussed, Defendants' defenses to their liability under the Guaranty fail, as a matter of law. Defendants, therefore, are liable for payment on the Note upon WSG Dulles' default. Plaintiff filed an affidavit from Jorge Rodriguez, Asset Manager of LNR Partners, LLC, claiming that the amount due and owing under the Note as of February 28, 2012 was $4,599,985.43, with a per diem interest accruing at a rate $849.49 until paid. Dkt. No. 30-1, Ex. 5. The Court finds this calculation to be just and accurate.

## IV. CONCLUSION

For the reasons stated in open court and for those contained herein, Plaintiff LBCMT 2007-C3 Sterling Retail, LLC's Motion for Summary Judgment (Dkt. No. 28) is GRANTED. An appropriate order shall issue.

May 15, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge